## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

**THE MILLENNIUM GROUP OF**
**DELAWARE, INC., d/b/a The**
**Millennium Group,**
**106 Apple Street, Suite 101D, Tinton**
**Falls, NJ 07724,**

          **Plaintiff,**

          **v.**

**TRAVIS MIKKOLA,**
**7006 Tea Olive Court**
**Spring, TX 77389,**

          **Defendant.**

_____

**Civil Action No. _____**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff The Millennium Group of Delaware, Inc., d/b/a The Millennium Group ("TMG"), by its undersigned counsel, for its Complaint against Defendant Travis Mikkola ("Mikkola") alleges as follows:

### NATURE OF THE CASE

1.    TMG brings this action to stop Mikkola, a former National Business Development Specialist, from his misappropriation of TMG's confidential business information and trade secrets and breaches of agreements with TMG.

2.    In the days leading up to Mikkola's sudden resignation from TMG, Mikkola copied a host of highly confidential business information from his TMG-

owned laptop onto several personal external storage devices.

3.      Then, days later, Mikkola began working for a competitor of TMG in violation of a non-compete agreement.

4.      While working for this competitor, and before he returned his TMG-owned laptop, Mikkola continued to use his TMG-owned laptop to access TMG's highly confidential business information and trade secrets.

5.      Mikkola eventually returned his laptop to TMG; however, he never returned the personal external storage devices and thus he continues to retain TMG's confidential information while working for a direct competitor of TMG.

6.      In addition, Mikkola has used TMG's confidential information in an effort to harm TMG by, *inter alia*, contacting and attempting to recruit and solicit TMG's clients.

7.      TMG has suffered and continues to suffer irreparable harm from Mikkola's misconduct.

8.      TMG files this action to obtain injunctive relief to prevent the dissemination and use of its confidential and proprietary information by Mikkola to help his new employer (a direct competitor of TMG) and to compensate TMG for Mikkola's misappropriation of TMG's trade secrets and confidential business information, unfair competition, breaches of contract, breach of fiduciary duty, tortious interference, trade libel, and violation of the Computer Fraud Abuse Act.

## PARTIES

9.     TMG is a corporation organized and existing under the laws of Delaware, with its principal place of business in New Jersey and, thus, is a citizen of both of those states.

10.     Mikkola is an individual domiciled in the State of Texas, and thus is a citizen of that state.

11.     Mikkola worked for TMG as a National Business Development Specialist from March 25, 2019 to April 21, 2023.

12.     The Court has personal jurisdiction over Mikkola because he maintains significant contacts with the State of New Jersey, including contacts giving rise to the claims in this action.

13.     The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 as this action asserts claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. This Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367, as they are so related to TMG's federal trade secrets claim that they form part of the same case or controversy under Article III of the United States Constitution.

14.     The Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 exclusive of interest and costs and the dispute involves individuals and entities that

3

are citizens of different states (New Jersey and Delaware for TMG and Texas for Mikkola).

15.     Immediate injunctive relief will also be sought pursuant to Fed. R. Civ. P. 65 as well as permanent injunctive relief.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to TMG's claims occurred in the District of New Jersey and Mikkola's misconduct, as described below, was directed toward and caused harm to TMG in New Jersey.

## TMG'S BACKGROUND

17.     TMG is a leading business process outsourcing ("BPO") firm focused on print, mail, shipping & receiving, facilities management/maintenance, logistics, document scanning, reception, and related office support services to include Fortune 1000 companies, professional service firms, government agencies, non-profit organizations, and institutions of higher education.

18.     TMG's predecessor entities were founded in 1984 to meet the printing, mailing and fulfillment needs of New York's local financial institutions.

19.     After decades of success and expansion, TMG has become one of the largest private BPO firms and currently provides office services facilities management support to over 150 clients across North America, Central America, Ireland, and the United Kingdom.

20.     TMG's corporate headquarters are located in Tinton Falls, New Jersey.

21.     TMG's off-site services operate a 110,000 square foot digital print, mailing, materials fulfillment, and records storage space in Piscataway, New Jersey.

22.     TMG professionals are deployed within leading organizations across various industries including: Finance, Investment Banking, Insurance, Entertainment, Retail, Pharma Life Sciences, Legal, Technology, Consumer Goods, Energy, Automotive, Education, Media, Non-Profit, and Government Agencies.

23.     To provide those services, TMG has committed and expended substantial time, resources, and effort to develop, for its sole use, a database of proprietary, confidential, and trade secret information ("Confidential Information") and proprietary, confidential and trade secret methods, systems, knowledge, and know-how used to provide its services ("Confidential Methods").

24.     TMG's Confidential Information includes past, current, and prospective client, customer, contractor, and vendor lists with key business information including rates; past, current, and prospective referral sources; pricing techniques and models; proformas; rate cards; key performance indicators ("KPIs"); quarterly business reviews ("QBRs"); monthly management reports ("MMRs"); sales presentations/decks; TMG capabilities decks/presentations; prospect lists; case studies; TMG infographics; business development reporting templates; Facilities Management and Support Services Agreements; business data compilation and

information; marketing activities; business expansion or divestiture plans; the identities of key personnel and the requirements of TMG's clients, customers, referral sources, and vendors; business plans and strategies; financing arrangements; contract expiration dates; sales databases; TMG work product and drafts; client/customer comments; standards; specifications; templates; TMG submissions for requests for proposals; reference material; training programs; management programs; confidential assessments and evaluations; client/customer relations procedures; confidential reports and analysis; credit and financial data concerning clients, employees, compensation, operations, future or proposed products or services (whether these are planned, under consideration, or in production), and any features of those products or services; information related to financial lists, records, and specifications, all of which are owned or used by TMG, its affiliates, and/or its subsidiaries, and/or their clients in the operations of such businesses; and any other non-public information relating to the business and affairs of TMG.

25. TMG's Confidential Methods were developed through years of experience and include proprietary planned methods of operation, know-how, plans, and procedures, trade secrets, and a unique and successful method of using and implementing TMG's Confidential Information to service TMG's existing clients and to allow TMG to secure new business.

26. TMG's Confidential Information and Confidential Methods have

significant commercial and pecuniary value, are among its most valuable assets, provide TMG with a competitive advantage, would be very valuable to a competitor, and are deserving of protection under the law.

## MIKKOLA'S EMPLOYMENT WITH TMG

27.    TMG hires National Business Development Specialists to increase TMG's market share in the highly competitive office services facilities management BPO industry by finding and engaging new clients.

28.    TMG expends significant time, effort, and expense in recruiting qualified persons to serve as National Business Development Specialists, and in educating and training those persons on TMG's protocols, procedures, and techniques in the office services facilities management BPO industry.

29.    To facilitate the ability of its National Business Development Specialists to market and sell TMG's services, TMG introduces its National Business Development Specialists to its clients, prospective clients, and referral sources, and also provides its National Business Development Specialists with leads and other information to assist the National Business Development Specialists in identifying and contacting contact persons at prospective clients.

30.    National Business Development Specialists are entrusted with the regular use, development, and cultivation of TMG Confidential Information and Confidential Methods, and are engaged in the regular use, development, and

cultivation of TMG's relationships with current and potential clients, customers, business partners, employees, and vendors.

31.     Because National Business Development Specialists are of critical importance to TMG's success and profitability as an organization, and because of the high level of competition in the BPO industry for qualified individuals, TMG provides substantial compensation and a generous benefit package to its National Business Development Specialists.

32.     On March 25, 2019, Mikkola was hired by TMG as a National Business Development Specialist.

33.     Mikkola received significant compensation in the position of National Business Development Specialist including base salary, incentive compensation, an auto allowance, paid time off, and participation in TMG's benefit plans. As part of his incentive compensation, Mikkola received commissions in connection with contracts with TMG clients who operate in New Jersey.

34.     At TMG, Mikkola was responsible for business development and client services. He made sales calls, researched customer needs, and assisted in the development of the application of products and services to ensure sales opportunities for TMG's services. He did market research to determine client needs and gathered client technical information and feedback. Mikkola participated with TMG leadership in contract negotiations with clients, executed strategy with clients,

attended financial and presentation calls/meetings with TMG executives, assisted in the development of business solutions with the Business Development team, canvassed for new opportunities, attended trade shows for lead generation, and supported new business transitions. Mikkola was also a key member during TMG's recent transition strategy for its Business Development CRM (Customer Relationship Management System). As a trusted committee member, Mikkola had visibility to highly sensitive client information.

35.     Mikkola worked remotely from a home office in Texas but was required to travel anywhere in North America based on business demand.

36.     As a member of the corporate team, Mikkola routinely interacted with other corporate staff who worked out of the TMG corporate headquarters in New Jersey, including those in management, operations, compliance, executive leadership, business development, and human resources. Mikkola also traveled to TMG's corporate headquarters & production operation in New Jersey for corporate team building events and holiday activities.

37.     Mikkola was provided with a TMG-owned laptop (the "HP Laptop") to perform his duties.

38.     During and by virtue of Mikkola's employment with TMG, Mikkola was entrusted with the regular use, development, and cultivation of TMG Confidential Information and Confidential Methods, and was engaged in the regular

use, development, and cultivation of TMG's relationships with current and potential

clients, customers, business partners, employees, and vendors.

39.    Given Mikkola's access to TMG's Confidential Information and

Confidential Methods, on February 7, 2019, Mikkola agreed to various restrictive

covenants ("Restrictive Covenants") in connection with accepting employment with

TMG:

> As an employee of The Millennium Group Inc., I understand and agree
> that I am strictly prohibited from disclosing and or removing any
> information or material which I have access to while performing this
> assignment from any company that The Millennium Group Inc. is
> providing services to. I further understand that I am restricted from
> accepting employment either directly or indirectly with any company
> or related subsidiary company that The Millennium Inc. is providing
> services to and or any company located within twenty miles of any
> facilities that The Millennium Group Inc., has or is currently providing
> services to for a period of six months from the date of termination of
> my employment with The Millennium Group Inc. The Millennium
> Group Inc. will not be responsible for any non-compete between an
> employee and their previous employers. These restrictions, which are
> for the period of six months, applies to all customers locations The
> Millennium Group Inc. is currently providing or has provided services
> to. This also applies to any direct competitive company that The
> Millennium Group Inc. is directly competing against now or in the
> immediate future. This non-disclosure shall cover The Millennium
> Group Inc.'s existing services or any services that The Millennium
> Group Inc. may enter into the future.

(*See* Exhibit A.)

40.    The offer of employment by TMG, and Mikkola's acceptance of that

employment, was sufficient consideration for the Restrictive Covenants.

41.    Pursuant to the Restrictive Covenants, Mikkola was precluded from

accepting employment with any company that directly competed with TMG for six months after his employment with TMG ended.

42.     Pursuant to the Restrictive Covenants, Mikkola was precluded from removing or disclosing to a third-party TMG's Confidential Information and Confidential Methods.

43.     In order to further safeguard TMG's Confidential Information and Confidential Methods, and as a condition of employment, TMG employees are required to agree to TMG's Confidentiality and Nondisclosure of Trade Secrets Policy which states:

> As a condition of employment, TMG associates are required to protect the confidentiality of Company trade secrets, proprietary information, and confidential commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.) related to TMG. Access to this information should be limited to a "need to know" basis and should not be used for personal benefit, disclosed, or released without prior authorization from management. If you have information that leads you to suspect that associates or competitors are obtaining such information, you are required to inform the Director of Operations.
>
> Violation of this policy may result in discipline or termination, and may subject the violator to civil liability.

(*See* Exhibit B.)

44.     Mikkola agreed to abide by TMG's Confidentiality and Nondisclosure of Trade Secrets Policy.

45.     The confidentiality of TMG's Confidential Information and

Confidential Methods is reiterated in connection with TMG's Ethics Code and Standards of Conduct which TMG employees also must agree to as a condition of employment:

> We expect that associates will not engage in unethical practices including but not limited to theft, harassment or falsifying records/documents. We also expect that they will not knowingly make misrepresentations about TMG and will not speak on behalf of TMG unless specifically authorized. The confidentiality of trade secrets, proprietary information, and similar confidential commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.) about TMG or operations, or that of our customers or partners, is to be treated with discretion and only disseminated on a need-to-know basis.
>
> …
>
> Examples of inappropriate conduct include, but are not limited to: . . .
>
> - Disclosure of Company trade secrets and proprietary and confidential commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development information, customer lists, patents, trademarks, etc.) of TMG or its customers, contractors, suppliers, or vendors[.]

(*See* Exhibit B.)

46.     Mikkola agreed to abide by TMG's Ethics Code and Standards of Conduct.

47.     TMG also implements access control protocols and other information security procedures and tools which limit access to its Confidential Information and Confidential Methods to maintain the confidentiality of the Confidential Information

12

and Confidential Methods and to deter and prevent unauthorized access or disclosure of same.

48.    The TMG server is password protected. Access to server files is based on the principle of least privilege. TMG employees only have access to folders and files which they need to complete their job based on their respective position. A firewall protects the server from unauthorized remote access. Penetration tests are done quarterly to ensure the network is secure. Web filters with SSL inspection and email filters are in place. VPN is used for accessing shared files based on users' privileges and all transfers are encrypted.

49.    TMG's Email and Internet System Policy, which applies to all individuals accessing or using the system through onsite or remote terminals, states as follows:

- The system is to be used for business purposes only.

- The System, and all data transmitted or received through the System, is the exclusive property of TMG. You should not have any expectation of privacy in any communication over this System. If you are permitted to have access to the System, you will be given a voicemail, email, and/or Internet address and/or access code and will have use of the System consistent with this System policy.

- TMG reserves the right to monitor, intercept, and/or review all data transmitted, received, or down-loaded over the System. Any individual who is given access to the System is hereby given notice that TMG will exercise this right periodically, without prior notice and without the prior consent.

- The interests of TMG in monitoring and intercepting data include,

but are not limited to: protection of Company trade secrets, proprietary, and similar confidential commercially-sensitive information (i.e. financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.); managing the use of the computer system; and/or assisting associates in the management of electronic data during periods of absence.

- You should not interpret the use of password protection as creating a right or expectation of privacy. To protect everyone involved, no one can have a right or expectation of privacy regarding the receipt, transmission, or storage of data on the System.

(*See* Exhibit B.)

50.  Mikkola agreed to abide by TMG's Email and Internet System Policy.

## MIKKOLA'S RESIGNATION FROM TMG AND UNAUTHORIZED USE AND ACCESS OF TMG CONFIDENTIAL INFORMATION AND CONFIDENTIAL METHODS

51.  At approximately 12:00 p.m. on Friday, April 21, 2023, Mikkola informed TMG Executive Vice President Frank Farnacci that he was resigning from his employment with TMG effective immediately.

52.  Mikkola provided TMG with no notice of his resignation prior to April 21, 2023.

53.  On Friday, April 21, 2023, during this same telephone conversation with Executive Vice President Frank Farnacci, Mikkola verbally acknowledged accepting a position with IST Management Services, Inc. ("IST").

54.  IST is a direct competitor of TMG in the office services facilities management BPO industry.

55.     Mikkola further clarified in a telephone conversation on April 21, 2023 with Merrick Colson, TMG Executive Director, that he was taking a Regional Vice President position with IST.

56.     Mikkola's acceptance of employment with IST is a breach of the Restrictive Covenants.

57.     On April 24, 2023, TMG restricted Mikkola's remote access to TMG's systems; however, Mikkola was still in possession of his HP Laptop which gave him the ability to access files, including Confidential Information, that was stored locally on the laptop.

58.     On April 24, 2023, TMG informed Mikkola that TMG would be providing Mikkola with a shipping label to ship TMG's property, including the HP Laptop, back to TMG.

59.     On April 24, 2023, TMG provided Mikkola with the shipping label to return the HP Laptop.

60.     On April 24, 2023, TMG's outside counsel sent Mikkola a letter reminding Mikkola of his post-employment obligations and requesting that Mikkola immediately return all TMG Confidential Information in his possession and the HP Laptop.

61.     The April 24, 2023 letter also placed Mikkola on notice that TMG was considering legal action:

Case 3:23-cv-03081   Document 1   Filed 06/05/23   Page 16 of 51 PageID: 16

We will be monitoring your activities going forward in order to be satisfied that no facts develop that would jeopardize TMG's established and future business interests, including the protection of client relationships and trade secrets. As you know, any such action will result in significant financial damage to TMG. We hope that you will not underestimate the seriousness with which our client views this situation and that you decide to comply with the terms of the Agreement. TMG has authorized this firm to pursue all legal remedies available to it, including injunctive relief and damages, which are necessary to protect its interests and to ensure that any improper conduct by you is terminated.

62.     As of April 26, 2023, Mikkola had still not returned the HP Laptop to TMG.

63.     On April 26, 2023, in response to numerous inquiries from TMG, Mikkola claimed that he was "[o]ut of town at the moment" and that he would ship the laptop to TMG on Friday, April 28, 2023.

64.     On Saturday, April 29, 2023—*i.e.*, over one week after he resigned from his employment with TMG—Mikkola finally shipped the HP Laptop back to TMG.

65.     TMG received the HP Laptop on May 2, 2023.

66.     After receiving the HP Laptop, TMG discovered that Mikkola downloaded TMG Confidential Information to personal external storage devices both while employed by TMG and after he was no longer employed by TMG.

67.     None of these external storage devices were returned to TMG by Mikkola.

68.    After receiving the HP Laptop, TMG discovered that Mikkola accessed Confidential Information on the HP Laptop on the day he resigned from TMG as well as after he was no longer employed by TMG.

69.    For example, on April 21, 2023—*i.e.*, during his last day working with TMG and before he notified TMG that he was resigning—Mikkola inserted a personal external storage device into the HP Laptop and, upon information and belief, transferred TMG Confidential Information to that personal storage device including an Excel file titled "TMG Master Client List 3.10.22.xlsx." This spreadsheet is Confidential Information as it contains propriety and commercially sensitive business information of TMG and its clients. Mikkola transferred this Excel file to his personal external storage device knowing that he would shortly be resigning from TMG and commencing work at TMG's competitor IST.

70.    As another example, on April 25, 2023 and April 27, 2023—*i.e.*, after he was no longer employed by TMG and while he was employed by TMG's competitor IST—Mikkola navigated to TMG's "OneDrive" account which was saved locally on his HP Laptop and, upon information and belief, accessed TMG Confidential Information including pricing techniques and models, the identities of key personnel and the requirements of TMG's clients, TMG templates, TMG submissions for requests for proposals, and other non-public and highly confidential information relating to the business and affairs of TMG and its clients.

71.    On April 25, 2023 and April 27, 2023, when claiming he was "out of town" and unable to return TMG's laptop,  Mikkola transferred additional files from his HP Laptop to his personal storage devices including, upon information and belief, TMG's Confidential Information.

72.    Mikkola's personal storage devices that he inserted into the HP Laptop contain numerous folders that include the names of TMG's Clients.

73.    Mikkola's personal storage devices that he inserted into the HP Laptop contain numerous folders that include the names of TMG's Confidential Information including "QBR," (*i.e.*, quarterly business review), "RFP Examples," (*i.e.*, request for proposal), and "Capabilities Deck."

74.    Mikkola was not authorized by TMG to download TMG Confidential Information from his HP Laptop to personal external storage devices.

75.    Mikkola was not authorized by TMG to access TMG Confidential Information, including on his HP Laptop, after he resigned from TMG.

76.    The files in TMG's systems, which were improperly accessed and copied by Mikkola, have independent economic value and TMG exercised reasonable efforts to maintain their secrecy.

77.    Those efforts included employing a password control system and requiring all employees to agree to strict confidentiality requirements in connection with their employment and access to TMG's systems.

78.    Upon information and belief, Mikkola still retains TMG's Confidential Information, including its trade secrets.

79.    Upon information and belief, Mikkola is now using TMG's Confidential Information and Confidential Methods for his own personal benefit and the benefit of his new employer, a direct competitor of TMG, to, *inter alia*, solicit TMG clients and prospective clients while working for IST, gain a competitive advantage over TMG, induce TMG's clients to terminate their contracts with TMG, and harm TMG.

80.    For example, while employed by IST, Mikkola has contacted numerous TMG clients and has highlighted what he claims are "IST Advantage[s]" by comparing TMG and IST and disclosing Confidential Information, including information about TMG's internal systems, certifications, personnel/structure, and operations. TMG provides support for these clients' operations across the country including, specifically, in New Jersey.

81.    Upon information and belief, Mikkola has also contacted TMG clients and prospective clients and disparaged TMG in an effort to solicit their business, increase IST's market share, and harm TMG. Some of these clients have operations in New Jersey.

82.    For example, on April 26, 2023, Mikkola emailed at least two TMG clients, with the subject line "Reconnecting with a valued client," telling them that

he was now employed by IST and that he left TMG because he "needed to offer my clients a more robust solution with cutting edge technology, detailed written web based processes and a culture of excellence."

83.    This statement is false and disparaging to TMG as it insinuates that TMG does not possess "robust solution[s]," "cutting edge technology," "detailed written web based processes," and "a culture of excellence."

84.    Mikkola's conduct in intentionally interfering with TMG's relationship with its clients and prospective clients has caused or may cause a loss of goodwill, a loss of economic opportunity, and a loss of TMG's competitive advantage.

85.    Given Mikkola's misappropriation of TMG's Confidential Information to external storage devices on the day of his departure from TMG and even after he was working for a direct competitor, which remain in his possession, it is highly likely that they are being used or may be disclosed by him and/or for the benefit of his new employer to the detriment of TMG.

86.    Mikkola continues to misappropriate TMG's Confidential Information, including its trade secrets.

87.    Mikkola's conduct in accessing, appropriating, and misusing TMG's Confidential Information and Confidential Methods is a breach of his contractual agreements with TMG including, but not limited to, TMG's Confidentiality and Nondisclosure of Trade Secrets Policy, TMG's Ethics Code and Standards of

Conduct, and TMG's Email and Internet System Policy.

88.     Mikkola's conduct in accessing, appropriating, and misusing TMG's Confidential Information and Confidential Methods is a breach of the Restrictive Covenants.

89.     TMG has spent significant time and resources investigating Mikkola's unlawful and unauthorized conduct and has incurred significant investigatory and other fees as a result.

90.     Mikkola's conduct as described above has caused TMG harm including, but not limited to, the costs of an extensive investigation into Mikkola's unlawful conduct, lost goodwill and damages to TMG's reputation, potential and/or actual lost profits and economic opportunity, and potential and/or actual lost business opportunities. The value of the contracts with TMG's clients who Mikkola has already contacted, as outlined above, far exceed $150,000.

91.     TMG also seeks injunctive relief to prevent the further and/or future use of its Confidential Information and Confidential Methods by Mikkola.

## COUNT I
## VIOLATION OF DEFEND TRADE SECRETS ACT
## (18 U.S.C. §§ 1832 and 1836)

92.     TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

93.     As a National Business Development Specialist, Mikkola had

knowledge of and access to highly confidential information and materials related to nearly every aspect of TMG's overall business strategy including, but not limited to, TMG's Confidential Information and Confidential Methods.

94.    TMG has expended substantial time and resources in the development of its Confidential Information and Confidential Methods.

95.    TMG takes significant measures to keep its Confidential Information and Confidential Methods secret, including by, among other things, requiring TMG employees to agree to keep TMG's Confidential Information and Confidential Methods confidential, and by keeping its Confidential Information and Confidential Methods secured in electronic databases.

96.    All of TMG's Confidential Information and Confidential Methods derive independent economic value from not being generally or readily ascertainable through proper means by the general public or by its competitors.

97.    TMG's Confidential Information and Confidential Methods provide TMG with an advantage in the BPO industry because they were developed over time, after trial-and-error, and after significant investments in research and development.

98.    All of TMG's Confidential Information and Confidential Methods are related to interstate or foreign commerce, as they are used in the service of TMG, which operates on a nationwide basis and provides services to individuals and companies around the country and across North America.

99.   TMG never authorized Mikkola to access or use its Confidential Information and Confidential Methods after the last date of his employment.

100.   TMG never authorized Mikkola to copy or download its Confidential Information and Confidential Methods to a personal external storage device and retain that information after his employment with TMG ended.

101.   Mikkola has knowingly and intentionally misappropriated TMG's Confidential Information and Confidential Methods for his own use and benefit and that of his new employer, a direct competitor of TMG.

102.   Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods has caused significant damages to TMG, including the costs of an extensive investigation into his unlawful conduct and his use of that Confidential Information to improperly solicit TMG's clients and unfairly compete with TMG.

103.   Mikkola has improperly derived and continues to improperly derive economic benefit from his theft of TMG's Confidential Information and Confidential Methods, and, in so doing, has deprived and continues to deprive TMG of the benefits it is rightfully entitled to derive from its now-stolen Confidential Information and Confidential Methods.

104.   Mikkola's scheme to steal and exploit TMG's Confidential Information and Confidential Methods has violated Section 1832 and its prohibition against theft

of trade secrets.

105.   Mikkola's conduct described herein will continue to cause irreparable harm to TMG and the public unless enjoined by this Court.

106.   An award of money damages alone cannot fully compensate TMG for its injuries and the continued threat of misappropriation by Mikkola, and TMG has no adequate remedy at law.

WHEREFORE, TMG respectfully requests and prays that the Court:

A.   Enter judgment in TMG's favor and against Mikkola on Count I of the Complaint;

B.   Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

i.   from using in any manner TMG's Confidential Information and Confidential Methods;

ii.   from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

iii.   from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C.   Order Mikkola and all those in active concert or participation or otherwise in privity with him to return all of TMG's Confidential Information and Confidential Methods, including all USB devices and/or computers that contain such information, for the deletion of that information.

24

D. Award TMG damages as a result of Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F. Grant TMG any other relief as the Court deems necessary and proper.

## COUNT II
## VIOLATION OF NEW JERSEY TRADE SECRETS ACT
## N.J.S.A. 56:15-1, *et seq.*

107.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

108.   Mikkola's actions constitute trade secret misappropriation and a violation of New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq* ("NJTSA").

109.   Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods has caused significant damages to TMG, including the costs of an extensive investigation into Mikkola's unlawful conduct, lost goodwill and damages to TMG's reputation, potential and/or actual lost profits and economic opportunity, and potential and/or actual lost business opportunities.

110.   TMG is entitled to its actual loss caused by Mikkola's misappropriation and any unjust enrichment caused by misappropriation that is not taken into account in computing actual, or other damages pursuant to N.J.S.A. 56:15-4.

111.   Mikkola's misappropriation was and is willful and malicious, entitling TMG to punitive damages pursuant to N.J.S.A. 56:15-4.

112.   TMG is entitled to its reasonable attorney's fees and costs as a result of Mikkola's willful and malicious misappropriation pursuant to N.J.S.A. 56:15-6.

113.   Mikkola's conduct described herein will continue to cause irreparable damage to TMG unless enjoined by this Court.

114.   An award of money damages alone cannot fully compensate TMG for its injuries, and TMG has no adequate remedy at law.

115.   Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods should be enjoined pursuant to N.J.S.A. 56:15-3(a).

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count II of the Complaint;

B. Determine that Mikkola willfully violated N.J.S.A. 56:15-1, et seq., that TMG has been damaged by such violations, and that Mikkola is liable to TMG for such violations;

C. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i. from using in any manner TMG's Confidential Information and Confidential Methods;

   ii. from competing with TMG for a period of time sufficient to

protect TMG's Confidential Information and Confidential Methods; and

   iii.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

D.  Order Mikkola and all those in active concert or participation or otherwise in privity with him to return all of TMG's Confidential Information and Confidential Methods, including all USB devices and/or computers that contain such information, for the deletion of that information.

E.  Award TMG damages as a result of Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

F.  Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

G.  Grant TMG any other relief as the Court deems necessary and proper.

## COUNT III
## COMMON LAW TRADE SECRET MISAPPROPRIATION

116.  TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

117.  Mikkola's actions constitute common law trade secret misappropriation.

118.  Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods has caused significant damages to TMG, including the costs of an extensive investigation into Mikkola's unlawful conduct, lost goodwill and

damages to TMG's reputation, potential and/or actual lost profits and economic opportunity, and potential and/or actual lost business opportunities.

119.   Mikkola's misappropriation was and is willful and malicious.

120.   Mikkola's conduct described herein will continue to cause irreparable damage to TMG and the public unless enjoined by this Court.

121.   An award of money damages alone cannot fully compensate TMG for its injuries, and TMG has no adequate remedy at law.

122.   Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods should be enjoined.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count III of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

i. from using in any manner TMG's Confidential Information and Confidential Methods;

ii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

iii. from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C.  Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D.  Award TMG damages as a result of Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E.  Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

123.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

124.  Mikkola misappropriated TMG's Confidential Information and Confidential Methods.

125.  TMG's Confidential Information and Confidential Methods have significant commercial and pecuniary value.

126.  The circumstances under which Mikkola misappropriated TMG's Confidential Information and Confidential Methods, as described in detail above, evidence bad faith and malicious conduct.

127.  Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods constitutes common law unfair competition.

29

128.   As a direct and proximate result of Mikkola's conduct, TMG has suffered significant damages, including the costs of an extensive investigation into Mikkola's unlawful conduct, lost goodwill and damages to TMG's reputation, potential and/or actual lost profits and economic opportunity, and potential and/or actual lost business opportunities.

129.   Mikkola's conduct described herein will continue to cause irreparable damage to TMG unless enjoined by this Court.

130.   An award of money damages alone cannot fully compensate TMG for its injuries, and TMG has no adequate remedy at law.

131.   TMG respectfully requests that Mikkola be enjoined from unfairly competing with TMG.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count IV of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i. from unfairly competing with TMG and using in any manner TMG's Confidential Information and Confidential Methods;

   ii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

      iii.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C.  Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D.  Award TMG damages as a result of Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E.  Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

## <u>COUNT V</u>
## <u>BREACH OF CONTRACT (RESTRICTIVE COVENANTS)</u>

132.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

133.   Mikkola signed a valid and enforceable agreement that contained Restrictive Covenants. (*See* Exhibit A.)

134.   TMG fully performed its obligations in connection with the agreement and the Restrictive Covenants by providing Mikkola employment with significant compensation and benefits that continued until he abruptly resigned.

135.   Pursuant to the Restrictive Covenants, Mikkola was precluded from accepting employment with any company that directly competed with TMG for six

months after his employment with TMG ended.

136.   Mikkola breached this agreement by accepting employment with IST, a direct competitor of TMG, just days after resigning from TMG.

137.   As of this filing of this Complaint, Mikkola continues to be in breach of this non-compete provision of the Restrictive Covenants.

138.   Pursuant to the Restrictive Covenants, Mikkola was precluded from removing or disclosing to a third-party TMG's Confidential Information and Confidential Methods.

139.   Mikkola breached this agreement by removing and/or disclosing to a third-party TMG's Confidential Information and Confidential Methods.

140.   As of this filing of this Complaint, Mikkola continues to be in breach of this confidentiality provision of the Restrictive Covenants.

141.   As a direct result of Mikkola's conduct, TMG has suffered irreparable harm and damages.

142.   TMG has no adequate remedy at law as the harms set forth above, including potential loss of goodwill, interference with its client relationships, and loss of its competitive advantage, cannot be compensated in monetary damages.

143.   In the alternative, Mikkola has breached his contractual obligations to TMG and, in so doing, has caused and is liable for damages to TMG resulting from such breach in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A.  Enter judgment in TMG's favor and against Mikkola on Count V of the Complaint;

B.  Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

    i.  from further breaching the Restrictive Covenants;

    ii.  from using in any manner TMG's Confidential Information and Confidential Methods;

    iii.  from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

    iv.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C.  Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D.  Award TMG damages as a result of Mikkola's misappropriation of TMG's Confidential Information and Confidential Methods in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E.  Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

33

## COUNT VI
## BREACH OF CONTRACT (TMG POLICIES)

144.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

145.   Mikkola agreed to be bound by certain TMG policies as a condition of his employment, including TMG's Confidentiality and Nondisclosure of Trade Secrets Policy, TMG's Ethics Code and Standards of Conduct, and TMG's Email and Internet System Policy (collectively the "Confidentiality Policies"). (*See* Exhibit B.)

146.   TMG fully performed its obligations in connection with the Confidentiality Policies by offering Mikkola employment and continuing to employ Mikkola until he voluntarily resigned.

147.   Pursuant to the Confidentiality Policies, Mikkola was precluded from removing or disclosing to a third-party TMG's Confidential Information and Confidential Methods.

148.   Mikkola breached this agreement by removing and/or disclosing to a third-party TMG's Confidential Information and Confidential Methods.

149.   As of this filing of this Complaint, Mikkola continues to be in breach of the Confidentiality Policies.

150.   As a direct result of Mikkola's conduct, TMG has suffered irreparable harm and damages.

151.   TMG has no adequate remedy at law as the harms set forth above, including potential loss of goodwill, interference with its other client relationships, and loss of its competitive advantage, cannot be compensated in monetary damages.

152.   In the alternative, Mikkola has breached his contractual obligations to TMG and, in so doing, has caused and is liable for damages to TMG resulting from such breach in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count VI of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i.   from further breaching the Confidentiality Policies;

   ii.  from using in any manner TMG's Confidential Information and Confidential Methods;

   iii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

   iv.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D. Award TMG damages as a result of Mikkola's breach of contract in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F. Grant TMG any other relief as the Court deems necessary and proper.

<u>**COUNT VII**</u>
<u>**BREACH OF FIDUCIARY DUTY**</u>

153. TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

154. Mikkola was employed by TMG from March 25, 2019 until his resignation on April 21, 2023, during which time he was a fiduciary of TMG and owed TMG certain duties, including a duty of loyalty.

155. The duty owed by Mikkola to TMG included the duty to act with the utmost fidelity, integrity, and honesty, and a duty not to act contrary to the interest of TMG.

156. Mikkola breached his duty of loyalty owed to TMG by failing to act in good faith and in the best interests of TMG.

157. Mikkola breached his duty of loyalty owed to TMG by acting in his own self-interests in misappropriating TMG's Confidential Information and Confidential Methods for his own use and benefit and/or that of his new employer.

158.   Mikkola used his position to acquire TMG's Confidential Information and Confidential Methods with the intention of using that information to benefit himself and/or a competitor of TMG.

159.   Mikkola's breach of his fiduciary duty of loyalty has caused significant damages to TMG.

WHEREFORE, TMG respectfully requests and prays that the Court:

A.   Enter judgment in TMG's favor and against Mikkola on Count VII of the Complaint;

B.   Award TMG damages as a result of Mikkola's breach of fiduciary duties in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

C.   Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

D.   Grant TMG any other relief as the Court deems necessary and proper.

**COUNT VIII**
**VIOLATION OF COMPUTER FRAUD ABUSE ACT (18 U.S.C. § 1030)**

160.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

161.   Mikkola intentionally and knowingly accessed his TMG-owned HP Laptop before and after the last day of his employment at TMG.

162.   Mikkola's TMG-owned HP Laptop is a protected computer, defined in 18 U.S.C. § 1030, as Mikkola used the TMG-owned HP Laptop in a way that

affected interstate or foreign commerce in the course of his work with TMG.

163.   Mikkola exceeded the granted authority to access his TMG-owned HP Laptop before and on his last day of employment by copying TMG Confidential Information and Confidential Methods onto personal storage devices.

164.   Mikkola lacked the authority to access his TMG-owned HP Laptop after his last day of employment.

165.   Mikkola unlawfully obtained data and information from his TMG-owned HP Laptop, including data containing TMG's Confidential Information and Confidential Methods.

166.   Mikkola accessed his TMG-owned HP Laptop, without authorization or by exceeding such authorization as was granted, and did so knowingly and with intent to defraud, and by means of such conduct furthered the intended fraud and obtained valuable information, including TMG's Confidential Information and Confidential Methods.

167.   Upon information and belief, Mikkola caused a loss of $5,000 or more during a one year span as a result of his improper access and use of TMG's Confidential Information and Confidential Methods contained on his TMG-owned HP Laptop.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count VIII of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i.   from further violations of the CFAA;

   ii.  from using in any manner TMG's Confidential Information and Confidential Methods;

   iii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

   iv.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D. Award TMG damages as a result of Mikkola's breach of contract in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F. Grant TMG any other relief as the Court deems necessary and proper.

**COUNT IX**
**TORTIOUS INTERFERENCE**
**(CURRENT CLIENTS)**

168.  TMG realleges and incorporates by reference the allegations contained

in the preceding paragraphs as if fully set forth herein.

169.   Mikkola was aware of the business and contractual relationships between TMG and its clients, including those relationships and contracts between TMG and the clients which Mikkola solicited as described above.

170.   Mikkola, without authorization, accessed TMG's computers systems and stole TMG Confidential Information and Confidential Methods which he, in turn, used in conjunction with making false and misleading solicitations of and statements to TMG's clients. Mikkola's wrongful actions constitute a tortious interference with TMG's business relationships and contracts with those clients.

171.   Mikkola's conduct in interfering with TMG's relationship and contracts with its clients has caused or may cause a loss of goodwill and a loss of TMG's competitive advantage in the market.

172.   As a direct result of Mikkola's conduct, TMG has suffered irreparable harm and damages.

173.   TMG has no adequate remedy at law as the harms set forth herein, including potential loss of goodwill, interference with its other client relationships, and loss of its competitive advantage cannot be compensated in monetary damages.

174.   In the alternative, Mikkola has caused and are liable for damages to TMG resulting his tortious interference in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count IX of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

    i. from further tortiously interference with TMG's contracts with its clients;

    ii. from using in any manner TMG's Confidential Information and Confidential Methods;

    iii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

    iv. from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D. Award TMG damages as a result of Mikkola's tortious interference in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F. Grant TMG any other relief as the Court deems necessary and proper.

## COUNT X
## TORTIOUS INTERFERENCE
## (PROSPECTIVE ECONOMIC ADVANTAGE)

175.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

176.   Mikkola was aware of the business relationships between TMG and its prospective clients, including those prospective clients who Mikkola was in sales discussions with on behalf of TMG prior to resigning from TMG.

177.   TMG has and had a reasonable expectation of economic advantage in connection with these prospective clients, including that the sales opportunity with these prospective clients would have led to potentially profitable contracts.

178.   Mikkola, without authorization, accessed TMG's computers systems and misappropriated TMG Confidential Information and Confidential Methods which he, in turn, upon information and belief, used in conjunction with making false and misleading solicitations of and statements to TMG's prospective clients. Mikkola's wrongful actions constitute a tortious interference with TMG's business relationships with those prospective clients.

179.   Mikkola's conduct in interfering with TMG's relationship with its prospective clients has caused or may cause economic damages to TMG and may have caused a loss of TMG's competitive advantage in the market as TMG may have received the anticipated economic benefits from the sale to the prospective clients

absent Mikkola's conduct.

180.   As a direct result of Mikkola's conduct, TMG has suffered irreparable harm and damages.

181.   TMG has no adequate remedy at law as the harms set forth herein, including loss of goodwill, interference with its business relationships, and loss of its competitive advantage cannot be compensated in monetary damages.

182.   In the alternative, Mikkola has caused and are liable for damages to TMG resulting his tortious interference in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count X of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i.   from further tortiously interference with TMG's prospective clients;

   ii.   from using in any manner TMG's Confidential Information and Confidential Methods;

   iii.   from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

   iv.   from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

    C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

    D. Award TMG damages as a result of Mikkola's tortious interference in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

    E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

Grant TMG any other relief as the Court deems necessary and proper.

## COUNT XI
## UNJUST ENRICHMENT

183.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

184.   Mikkola has unconscionably benefited from the unjustified misappropriation and use of TMG's Confidential Information and Confidential Methods, tortious interference with TMG's contractual relationships with its clients, and unauthorized access of TMG's systems.

185.   Mikkola has unjustly benefited from the foregoing misconduct to TMG's detriment.

186.   TMG has no adequate remedy at law as the harm set forth above, including potential loss of goodwill, interference with its other client relationships, and loss of its competitive advantage cannot be compensated in monetary damages.

Case 3:23-cv-03081   Document 1   Filed 06/05/23   Page 45 of 51 PageID: 45

187.   In the alternative, Mikkola has caused and is liable for damages to TMG resulting from their tortious interference in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count XI of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

   i. from further unjust benefiting and enriching himself to the detriment of TMG;

   ii. from using in any manner TMG's Confidential Information and Confidential Methods;

   iii. from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

   iv. from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D. Award TMG damages as a result of Mikkola's tortious interference in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-

judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

## COUNT XII
## VIOLATION OF THE NEW JERSEY
## COMPUTER RELATED OFFENSES ACT

188.   TMG realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

189.   Mikkola purposefully and knowingly accessed, altered, damaged and/or took data, and database information and computer software from TMG's computers, computer systems and/or computer networks without authorization.

190.   Mikkola further purposefully and knowingly accessed, altered and/or damaged TMG's computers, computer systems and/or computer networks without authorization.

191.   TMG has no adequate remedy at law as the harm set forth above, including potential loss of goodwill, interference with its other customer relationships and loss of its competitive advantage cannot be compensated in monetary damages.

192.   In the alternative, Mikkola has caused and is liable for damages to TMG in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A.  Enter judgment in TMG's favor and against Mikkola on Count XII of the Complaint;

46

B.  Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, agents, employees, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

    i.  from further violations of the New Jersey Computer Related Offenses Act;

    ii.  from using in any manner TMG's Confidential Information and Confidential Methods;

    iii.  from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

    iv.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C.  Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D.  Award TMG damages as a result of Mikkola's breach of contract in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E.  Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

## COUNT XIII
## COMMERCIAL DISPARAGEMENT/TRADE LIBEL

193.  TMG realleges and incorporates by reference the allegations contained

in the preceding paragraphs as if fully set forth herein.

194.   Since resigning from TMG, Mikkola's communications with TMG's clients and prospective clients about TMG were derogatory to TMG's business and were designed to prevent TMG's clients and prospective clients from dealing with TMG and/or otherwise  interfered with TMG's business relations with these clients and prospective clients.

195.   Mikkola's communications to TMG's clients and prospective clients, as outlined above, were done with an intent to induce TMG's clients and prospective clients not to deal with TMG.

196.   Mikkola's communications to TMG's clients and prospective clients, as outlined above, may play a material part in inducing TMG's clients and prospective clients not to deal with TMG.

197.   Mikkola's communications to TMG's clients and prospective clients, as outlined above, were false, implied statements of verifiably false facts, or were based on incorrect or incomplete facts.

198.   TMG has no adequate remedy at law as the harm set forth above, including potential loss of goodwill, interference with its other business relationships, and loss of its competitive advantage cannot be compensated in monetary damages.

199.   In the alternative, Mikkola has caused and is liable for damages to TMG

in an amount to be ascertained at trial.

WHEREFORE, TMG respectfully requests and prays that the Court:

A. Enter judgment in TMG's favor and against Mikkola on Count XIII of the Complaint;

B. Issue a preliminary and permanent injunction enjoining Mikkola and any of his relations, heirs, executors, administrators, representatives, agents, trusts, insurers and assigns officers, employees, agents, successors and assigns, and all those in active concert and participation with him, and each of them who receives notice directly or otherwise of such injunctions:

    i.  from further violations of the New Jersey Computer Related Offenses Act;

    ii.  from using in any manner TMG's Confidential Information and Confidential Methods;

    iii.  from competing with TMG for a period of time sufficient to protect TMG's Confidential Information and Confidential Methods; and

    iv.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

C. Order Mikkola and all those in active concert or participation or otherwise in privity with him to turn over all devices that contain TMG's Confidential Information and Confidential Methods for the deletion of that information.

D. Award TMG damages as a result of Mikkola's breach of contract in an amount to be determined at trial to compensate TMG for its damages including investigatory fees, any lost profits, goodwill, and business opportunities.

E. Award attorneys' fees, costs, expenses, and interest, including pre-judgment interest on the foregoing sums; and

F.  Grant TMG any other relief as the Court deems necessary and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TMG demands a trial by jury on all issues present in this civil action.

Dated: June 5, 2023

**CLARK HILL PLC**

_s/ Christopher M. Lucca_
Lisa Carney Eldridge (NJ I.D. No. 044821991)
Christopher M. Lucca (NJ I.D. No. 073512014)
2001 Market Street, Suite 2620
Two Commerce Square
Philadelphia, PA 19103
Phone: 215-640-8500
Fax: 215-640-8501
Email: leldridge@clarkhill.com
Email: clucca@clarkhill.com

_Attorneys for The Millennium Group_
_of Delaware, Inc._

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

Pursuant to Local Rule 11.2, counsel for Plaintiff hereby certifies, to the best of his knowledge, that this matter in controversy is not the subject of any other action currently pending in any court. I declare under penalty of perjury that the foregoing statements made by me are true.

Dated: June 5, 2023

**CLARK HILL PLC**

<u>*s/ Christopher M. Lucca*</u>
Lisa Carney Eldridge (NJ I.D. No. 044821991)
Christopher M. Lucca (NJ I.D. No. 073512014)
2001 Market Street, Suite 2620
Two Commerce Square
Philadelphia, PA 19103
Phone: 215-640-8500
Fax: 215-640-8501
Email: leldridge@clarkhill.com
Email: clucca@clarkhill.com

*Attorneys for The Millennium Group*
*of Delaware, Inc.*