NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE MILLENIUM GROUP OF DELAWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVIS MIKKOLA, <br><br> Defendant. | Civil Action No. 23-3081 (ZNQ) (RLS) <br><br> OPINION |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion", ECF No. 23) filed by Defendant Travis Mikkola ("Mikkola"). Mikkola filed a brief in support of his Motion ("Moving Br.", ECF No. 23). Plaintiff The Millennium Group ("TMG") filed a brief in opposition ("Opp.'n Br.", ECF No. 26), and Mikkola replied ("Reply", ECF No. 27). After careful consideration of the parties' submissions, the Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons outlined below, the Mikkola's Motion to Dismiss will be DENIED.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

TMG is a New Jersey-based business that deals with business process outsourcing. (*See* Complaint, "Compl.", ECF No. 1.) Their corporate headquarters, principal place of business, and majority of their corporate team are located in Tinton Falls, New Jersey. Additionally, TMG has an off-site services facility that operates digital print, materials fulfillment, and records storage in Piscataway, New Jersey. (*Id.*)

Mikkola was employed by TMG from March 25, 2019 to April 21, 2023. (Compl. ¶ 11.) He worked as a National Business Development Specialist, entailing client outreach that necessitated his access to TMG Confidential Information and Confidential Methods. (Compl. ¶¶ 32–38.) When Mikkola was hired by TMG, he signed several documents, including a six-month non-compete clause and an agreement not to remove or disclose to a third-party TMG's Confidential Information and Confidential Methods. (*Id*.)

Mikkola performed his work from his remote office in Texas, where he resides, but he was required to travel for work across North America, with at least two trips to New Jersey. (Compl. ¶ 9.) Mikkola regularly communicated with corporate staff who worked out of the corporate headquarters in Tinton Falls and he regularly dealt with clients based in New Jersey. (Compl. ¶ 36.).

The same day that Mikkola's employment ended with TMG in April 2023, he informed TMG that he was accepting a position with IST Management Services ("IST"), a competitor of TMG, as a Regional Vice President. (Compl. ¶¶ 51–54.) TMG instructed Mikkola to return his company laptop, which contained TMG's Confidential Information. (Compl. ¶ 58.) Mikkola shipped the laptop back on April 29, 2023. (Compl. ¶ 64.)

TMG later discovered through forensic analytics that Mikkola accessed TMG's Confidential Information, via external storage devices, several times after his employment with TMG ended. (Compl. ¶¶ 69–73.) Mikkola has contacted over 100 different people who work at TMG's clients or prospective clients in an attempt to recruit them to IST's clientele. (Compl. ¶¶ 79–85.)

## II.   JURISDICTION

This Court has subject matter jurisdiction over TMG's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over its remaining claims under 28 U.S.C. § 1367.

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12, a complaint is subject to dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). And "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted). More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

3

Where an intentional tort is alleged, a variation of the specific jurisdiction test applies. In the context of intentional torts, "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 577 U.S. 277, 287 (2014). The method of finding such necessary contact was explained in *Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Industries, Inc. v. Kiekert AG.*, 155 F.3d 254, 260 (3d Cir. 1998). The *Calder* effects test requires a plaintiff to demonstrate: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered as a result of the tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citation omitted).

"A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir.1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984)) (internal citations omitted). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . ." *Id*. "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id*.

IV.   **DISCUSSION**

The parties do not dispute that Mikkola is a citizen of Texas.  Mikkola asserts that he does not work or live in New Jersey and his employment contracts were not executed or negotiated there.  (Moving Br. at 3.)  He contends that the Complaint conspicuously fails to allege that: (1) he had any TMG client contacts in New Jersey; (2) he was involved in any TMG client contracts effectuated in New Jersey; (3) he had contact with clients concerning projects to take place in New Jersey; or (4) that any of the alleged trade secrets he purportedly stole concerned New Jersey projects.  (*Id*. at 3–4.)  Finally, Mikkola argues that his visits to TMG's corporate headquarters in New Jersey were mandated by TMG and therefore cannot serve as a basis for personal jurisdiction.  (*Id*. at 4.).

TMG opposes the Motion with, *inter alia*, a supporting declaration from its president.  (Declaration of Timothy P. Kerner ("Kerner Decl."), ECF No. 26-2.)  TMG argues, and its president attests, that Mikkola misappropriated TMG's confidential information about its New Jersey clients and then contacted 30 different employees of those clients in an attempt to solicit business, including sending at least three "cookie cakes" to the New Jersey clients.  (Opp'n Br. at 12–15; Kerner Declaration ¶¶ 28, 30–36.)[1]  In fact, one of the New Jersey clients Mikkola contacted was TMG's largest client by revenue.  (Kerner Decl. ¶ 37.)  As to the relatedness consideration, TMG argues that Mikkola's contacts with its clients are at the center of the parties' dispute.  (Opp.'n Br. at 15.)

As to fair play and substantial justice, TMG argues, and its president again attests, that Mikkola was aware that TMG was based in New Jersey when he was hired, that Mikkola worked for TMG for several years, that he travelled to New Jersey "on at least two occasions in connection

---

[1] TMG also provides examples of the solicitation emails that Mikkola sent to its New Jersey clients, as well as Mikkola's email ordering the cookie cakes for delivery to New Jersey addresses.  (Exhibit 2 to the Opp., ECF No. 26-3.)

5

with his TMG responsibilities," that he routinely communicated with staff members at TMG's New Jersey headquarters, and that he received compensation in connection with clients based in this state. (Opp.'n Br. at 16–17; Kerner Decl. ¶¶ 13–17.) TMG therefore contends that personal jurisdiction would not offend notions of fair play and substantial justice.

Mikkola devotes the relevant portion of his Reply to arguing that TMG cannot cure pleading deficiencies in its Complaint by asserting new facts in response to a motion to dismiss.[2] (Reply at 2–6.)

Applying the relevant *Calder* effects test, the Court finds that its first prong is met insofar as the Complaint alleges Plaintiff committed various intentional torts including (but not limited to) his misappropriation of its trade secret information and his tortious interference with its business relations. (Compl. Counts I–III, VIII–XII.) As to the second prong—where the harm was felt— the Court finds that the harm was felt in New Jersey. Generally, the location of trade secrets is where their owner resides. *See PPG Indus., Inc. v. Jiangsi Tie Mao Glass Co.*, No, 2:15-cv-00965, 2020 WL 1526940 (W.D. Pa. Mar. 31, 2020). TMG resides in New Jersey. Even more clearly, Mikkola's alleged interference with TMG's existing and prospective clients in New Jersey was "felt" in New Jersey given that both TMG and the clients are located in this state.

As to the third prong, where Mikkola aimed his tortious conduct, the Court is satisfied that the record at this stage supports a finding that Mikkola deliberately targeted a New Jersey company, TMG, with his tortious conduct. This is compounded by his deliberate targeting of TMG's clients in New Jersey. New Jersey therefore appears to have been the focal point of his alleged tortious activity, such that he should have anticipated being sued here.

---

[2] This is, of course, incorrect as a matter of law. As set forth above, in the context of a Rule 12(b)(2) motion like this one, it is entirely appropriate and often necessary for the party asserting jurisdiction to submit evidence and affidavits in further support of its assertion of personal jurisdiction. *Patterson,* 893 F.2d at 603–604. Accordingly, the Court sets aside Mikkola's arguments in his brief that are premised on the erroneous legal position.

In sum, the Court finds that it has personal jurisdiction over Mikkola.[3]

## V.     CONCLUSION

For the reasons outlined above, Mikkola's Motion to Dismiss will be DENIED. An appropriate Order will follow.

Date: February 15, 2024

                                                                    s/ Zahid N. Quraishi
                                                                    **ZAHID N. QURAISHI**
                                                                      **UNITED STATES DISTRICT JUDGE**

---

[3] The Motion does not raise a challenge to the "fair play and substantial justice" of asserting personal jurisdiction over Mikkola here in New Jersey, but the Court, based on the totality of the record before it, finds that it is fair and just to do so. Mikkola was employed by a New Jersey company for several years, was in regular contact with fellow employees in New Jersey and clients in New Jersey, is alleged to have misappropriated his New Jersey employer's confidential information and interfered with his employer's business with New Jersey clients and prospective clients.